Richard JACKSON, substitute claimant for Jessie Jackson, deceased, Social Security # 499–30–1072, Appellant,

v.

Louis W. SULLIVAN, Secretary of the Department of Health and Human Services, Appellee.

No. 92–2436.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1993.

Decided Jan. 29, 1993.

Anthony W. Bartels, Jonesboro, AR, argued, for appellant.

Joyce Shatteen, Dallas, TX, argued (Martin W. Long, on the brief), for appellee.

Before JOHN R. GIBSON, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HEANEY, Senior Circuit Judge.

## BACKGROUND

Claimant, Jessie Jackson, appeals the United States District Court's decision granting the Secretary of Health and Human Services' motion for summary judgment.[1] Jackson argues that the final decision of the Secretary, holding that he was able to resume his past relevant work as a parts inspector as of March 1982, is not supported by substantial evidence on the record as a whole.[2] For the reasons to be discussed, we affirm the decision of the district court.

At the time of the October 21, 1982, disability review hearing, Jackson was 52 years old, had no income, and lived with his mother. He had completed the seventh grade, and his past relevant work experience included being a truck driver, a janitor, an assembler, and a parts inspector. He last worked in 1974 when he was involved in an automobile accident, sustaining injuries to his ankles, knees, legs, and hips.

On October 31, 1974, Jackson filed an application for disability insurance benefits alleging that he became unable to work on October 10, 1974, because of injuries sustained in an automobile accident. Jackson was granted a period of disability and disability insurance benefits. In 1982, a disability review was initiated and a determination was made that Jackson's disability had ceased in March 1982. Pursuant to Jackson's request, a hearing de novo before an Administrative Law Judge (ALJ) was held on October 21, 1982. On February 28, 1983, the ALJ, relying on medical reports, held that Jackson's disability ceased in March 1982 and that he was able to perform his past relevant work as a parts inspector, which he classified as sedentary.[3] On December 14, 1983, the Appeals Council denied Jackson's request for review of the hearing decision. On December 19, 1984, the United States District Court for the Eastern District of Arkansas remanded the case to the Secretary pursuant to section two of the Social Security Disability Benefits Reform Act of 1984 for re-evaluation of Jackson's claim under the new medical improvement standard. In March of 1989, the State Agency and the Social Security Administration determined that Jackson's disability ended in March 1982[4] and started again in June 1983.[5] Jackson requested a hearing de novo before an ALJ, but later waived an oral hearing. The ALJ issued a decision on July 24,

1. Jessie Jackson died on October 6, 1984. His son, Richard Jackson, is now pursuing his original claim as a substitute party.

2. Jackson also argues, in the alternative, that his case should be remanded to the Secretary with instructions that he obtain vocational expert testimony regarding the issue of whether he had acquired skills from past work which were transferable to sedentary work. Because we find that the Secretary properly concluded that Jackson could return to his past relevant work as a parts inspector, we need not address this argument.

3. It appears to us, based on the following, that the ALJ at the disability review hearing, as well as the ALJs involved in subsequent proceedings, failed to fully develop the record regarding Jackson's past relevant experience as a factory worker/parts inspector. First, at the disability review hearing in 1982, Jackson submitted his work history, which identified his previous job as a "machine-shop worker and inspector," and listed the requirements of the position as "general shop work, running machines and inspection." See Jackson's Hearing Exhibit 20. Second, Jackson stated in a September 10, 1984, disability report that his relevant job title was "factory worker and inspector," and listed the following duties: "I helped build bullets and ammunition shells. I operated various machines. I filled in when an employee was off, and I inspected the parts." Thus, while Jackson's past relevant work, referred to in the various administrative proceedings as that of a "parts inspector," did include inspection of parts, it also appears to have involved other duties as well.

4. The Hearing Officer found that as of March 1982, Jackson retained the residual functional capacity to lift fifty pounds occasionally and twenty-five pounds frequently, and to stand, walk or sit six hours out of an eight-hour day with normal rest periods (i.e., medium work activity). He also found that Jackson had the capacity, at the time of cessation, to perform his past relevant work as an assembler or a janitor.

5. On August 13, 1984, Jackson filed a second application for disability insurance benefits alleging disability due to a heart attack.

1990, that Jackson's disability ceased in March 1982, and that Jackson could perform his past relevant work as a parts inspector, which, according to Jackson's disability review hearing testimony, was performed on a sedentary exertional level. On March 28, 1991, the Appeals Council denied Jackson's request for review of the ALJ's decision. Thus, the ALJ's decision became the final decision of the Secretary.

Jackson sought review of the Secretary's final decision in federal district court. On June 2, 1992, the court granted the Secretary's motion for summary judgment and dismissed the complaint. This appeal followed.

## DISCUSSION

The primary issue is whether the Secretary's conclusion that Jackson's impairments in March 1982 did not prevent him from performing his past relevant work as a parts inspector, which he determined to be performed on the sedentary exertional level, is supported by substantial evidence of the record as a whole.[6]

This case is troublesome because there is confusion in the record not only as to the exact nature of Jackson's past relevant job as parts inspector/factory worker, but also whether that job was indeed a sedentary job that he could perform, notwithstanding his existing disabilities in March 1982. If Jackson was still living or if there was a reasonable possibility that other witnesses could testify regarding the exact nature of his past job, we would remand. Unfortunately we do not have that luxury here. Thus, we have no alternative but to take the record as it is and make our decision.

Jackson testified at the October 21, 1982, disability review hearing regarding his past job as a parts inspector. The relevant testimony is as follows:

Q. (Questioning by ALJ) What kind of work have you done most of your life?

A. (Jackson) Well, farm, and I've worked at Grear (Phonetic) [claimant was referring to Revere Copper and Brass] for about six years and a half there, I think.

Q. What kind of place is that?

A. That's Grear copper and brass. We made war materials.

Q. What was your job there? You were inspecting parts?

A. Yes sir.

Q. What was this, just a visual inspection or did you have to use gauges and things like that?

A. I had to use gauges.

Q. Was this standing up?

A. Well, I didn't have to stand up too much, no.

Q. You sat down for most of it?

A. Yes sir.

Q. Did it require a lot of lifting?

A. No, I didn't do no lifting. You know, just little old curreps (Phonetic) [probably calipers] small curreps is all I'd lift.

Q. Just weighed a few ounces?

A. Yes sir.

Hearing before Kenneth Forrester, ALJ, Department of Health and Human Services, October 21, 1982, tr. at 17. In Jackson's disability report, however, he stated that his past work as a "factory worker and inspector" required him to stand eight hours out of an eight-hour day, constantly bend, constantly reach, and frequently lift/carry crates of bullet holes weighing in excess of fifty pounds and sometimes weighing one-hundred pounds.[7] Obviously, if these were the physical activities required to perform his prior job, Jackson would have been incapable of performing this work in March 1982, as most agree he was then limited to sedentary work. Despite this, and despite the fact that Jackson was not fully questioned about duties his job at the copper and brass plant may have included that were nonsedentary, we must

---

**6.** As previously stated, Jackson's disability entitlement to benefits pursuant to his first application was terminated the end of May 1982, and he was granted a new period of disability pursuant to a second application starting June 14,

1983. Thus, the period in question is approximately one year.

**7.** *See supra* note 3.

accept Jackson's description of his job that he made under oath. After carefully reviewing the record, we find that the ALJ's decision is supported by substantial evidence in the record as a whole. Accordingly, we affirm.

This is an appropriate occasion to again remind ALJs that it is their responsibility to develop the facts fully. We acknowledge the heavy workload that ALJs are required to undertake, but everyone, including the administrative agency and the courts, will be better served if some additional time is taken in each hearing to make sure that the record is fully developed.[8]

---

**8.** In this case, resolution of the conflicts in the record prior to Jackson's death would have been helpful.